UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 5:15-cr-41(S2)-Oc-10PRL

JOHN LUCKETT

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Lee Bentley, III, United States Attorney for the Middle District of Florida, the defendant, JOHN LUCKETT, and the attorney for the defendant, Mark O'Brien, mutually agree as follows:

### A.    Particularized Terms

#### 1.    Count(s) Pleading To

The defendant shall enter a plea of guilty to Count One of the Second Superseding Indictment.  Count One charges the defendant with conspiracy to distribute cocaine, a Schedule II controlled substance, the amount being five (5) kilograms or more, in violation of 21U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A).

#### 2.    Minimum and Maximum Penalties

Count One is punishable by a mandatory minimum term of imprisonment of ten years up to life imprisonment, a fine of $10,000,000, or both imprisonment and a fine, a term of supervised release of at least five years, and

Defendant's Initials                               AF Approval _BJ2_

a special assessment of $100.  A violation of the terms and conditions of supervised release could result in another term of imprisonment followed by an additional term of supervised release.

### 3.  Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count One are:

First:   Two or more people in some way agreed to try to accomplish a shared and unlawful plan to distribute cocaine;

Second:   The Defendant knew the unlawful purpose of the plan and willfully joined in it; and

Third:   The object of the unlawful plan was to distribute five (5) kilograms or more of cocaine.

Under Apprendi v. New Jersey, 530 U.S. 466 (2000), a minimum sentence of ten (10) years and a maximum sentence of life imprisonment may be imposed as to Count One because the following facts have been admitted by the defendant and are established by this plea of guilty:  Between in or about 2012, through on or about August 5, 2015, members of the conspiracy agreed to distribute five (5) kilograms or more of cocaine, and did in fact distribute five kilograms or more of cocaine, and the defendant personally assisted with the distribution scheme.

Defendant's Initials           2

4.   **Dismissal of Original Indictment**

At the time of sentencing, the original Indictment will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.   **No Further Charges**

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement.

6.   **Acceptance of Responsibility - Three Levels**

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level.

Defendant's Initials                     3

The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7.   **Cooperation - Substantial Assistance to be Considered**

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government

Defendant's Initials           4

agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8. **Use of Information - Section 1B1.8**

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

9. **Cooperation - Responsibilities of Parties**

a. The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the

Defendant's Initials         5

Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the

Defendant's Initials               6

indictment of a grand jury, does hereby agree to reinstatement of such charges
by recision of any order dismissing them or, alternatively, does hereby waive, in
open court, prosecution by indictment and consents that the United States may
proceed by information instead of by indictment with regard to any felony charges
which may be dismissed in the instant case, pursuant to this plea agreement,
and the defendant further agrees to waive the statute of limitations and any
speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for
any offenses set forth herein, if any, the prosecution of which in accordance with
this agreement, the United States agrees to forego, and the defendant agrees to
waive the statute of limitations and any speedy trial claims as to any such
offenses.

(4)     The government may use against the defendant the
defendant's own admissions and statements and the information and books,
papers, documents, and objects that the defendant has furnished in the course of
the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the
guilty pleas to those counts to which defendant hereby agrees to plead in the
instant case but, in that event, defendant will be entitled to the sentencing
limitations, if any, set forth in this plea agreement, with regard to those counts to
which the defendant has pled; or in the alternative, at the option of the United

Defendant's Initials                     7

States, the United States may move the Court to declare this entire plea agreement null and void.

### 10.   **Forfeiture of Assets**

On October 17, 2014, the Drug Enforcement Administration completed an administrative forfeiture of the sum of $217,340.00 in United States currency which it alleges were proceeds obtained by the defendant from his illegal drug distribution activities charged in Count One of the Second Superseding Indictment. The defendant did not contest the administrative forfeiture of these funds and expressly waives any right he may have to challenge such forfeiture.

Further, the defendant makes no claim to the following:

- the sum of $48,030.00 in United States currency seized from co-defendant Terrell Brown which was administratively forfeited by the Drug Enforcement Administration on December 2, 2015;

- the sum of $209,040.00 in United States currency seized from co-defendant Jose Angel Huerta, Jr which was administratively forfeited by the Drug Enforcement Administration on December 30, 2015;

- the sum of $58,700.00 in United States currency seized from co-defendant Cherish Harris Brown which was administratively forfeited by the United States Postal Service on March 1, 2016; and

- the sum of $154,647.00 in United States currency which was administratively forfeited by the United States Postal Service on March 3, 2016.

Defendant's Initials                     8

The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have that the forfeiture constitutes an excessive fine. Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

**B.**     **Standard Terms and Conditions**

    **1.**     **Restitution, Special Assessment and Fine**

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

Defendant's Initials      9

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing.

The defendant understands that this agreement imposes no limitation as to fine.

### 2. Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

### 3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### 4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made

Defendant's Initials                     10

by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

### 5. **Financial Disclosures**

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial conditi condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments,

Defendant's Initials             11

fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. **Sentencing Recommendations**

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

Defendant's Initials        12

7.    **Defendant's Waiver of Right to Appeal the Sentence**

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    **Middle District of Florida Agreement**

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials           13

9. **Filing of Agreement**

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. **Voluntariness**

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if

Defendant's Initials                     14

defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. **Factual Basis**

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12. **Entire Agreement**

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials                 15

13. **Certification**

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by the defendant and that defendant fully understands its terms.

DATED this _____ day of June, 2016.

A. LEE BENTLEY, III
United States Attorney

_____
JOHN LUCKETT
Defendant

_____
JAY TAYLOR
Assistant United States Attorney

_____
MARK O'BRIEN
Attorney for Defendant

_____
JULIE HACKENBERRY
Assistant United States Attorney
Chief, Jacksonville Division

Defendant's Initials _____        16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 5:15-cr-41(S2)-Oc-10PRL

JOHN LUCKETT

## PERSONALIZATION OF ELEMENTS

### Count One

1.     From 2012 through August 5, 2015, did you and one or more people in some way agree to try to accomplish a shared and unlawful plan to distribute cocaine?

2.     Did you know the unlawful purpose of the plan and willfully join in it?

3.     Was the object of the unlawful plan to distribute five (5) kilograms or more of cocaine in the Middle District of Florida and elsewhere?

Defendant's Initials                     17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 5:15-cr-41(S2)-Oc-10PRL

TERRELL BROWN

### **FACTUAL BASIS**

In early 2012, Terrell Brown was identified by law enforcement as being involved in the distribution of kilo quantities of cocaine in the Ocala area.

On February 27, 2013, John Luckett attempted to board a commercial airplane in Orlando, Florida, with a destination of Las Vegas, Nevada. He was found to be carrying $40,000 cash in his carry-on luggage. The money was seized and forfeited by DEA.

On May 9, 2014, two FedEx packages were intercepted by the Orange County Sheriff's Parcel Interdiction Unit. They were searched pursuant to search warrants. One package contained $58,000.00 and the other contained $159,340.00. Both boxes contained plastic 5 gallon containers with vacuum-wrapped U.S. currency concealed inside of spray-on foam insulation. The parcels were addressed to "Attn: Resident, XXXX NW 24th Ct., Ocala, Fl." The return address for both parcels was "Shipping and Office Services, 858 Third Ave. Chula Vista, Ca." Ocala Sheriff's officers went to the Ocala address and interviewed its resident, J.B. She advised that her boyfriend John Luckett had the

Defendant's Initials 

packages shipped to her house because his house had recently been broken into. On June 4, 2015, Luckett was interviewed and admitted shipping the money to Ocala. He said he had gone to California on a trip paid for by Terrell Brown and that he stayed in an apartment provided by Brown. He said that Brown told him some people would be coming by with marijuana and cocaine and that Luckett was to use the money in the boxes to pay for the drugs. Luckett falsely asserted that he told Brown he didn't want to be involved in that kind of activity so he mailed the cash back to Ocala. He said he mailed the cash to J.B.'s house because Terrell had broken into his house and stole some things. Luckett also admitted that he had mailed $200,005.00 seized by Homeland Security in Kentucky on September 11, 2013. That parcel was destined for Stockton, California, and addressed to a known associate of Terrell Brown. The cash was vacuum-sealed inside a box with spray-in foam insulation, bearing the return address of John Luckett.

On July 30, 2014, the U.S. Postal Inspection Service seized an outbound package in Jacksonville addressed to an individual in Chula Vista, California with a return address of a second individual in Summerfield, Florida. Research determined that the destination address was a bonafide address but that the return address and the individuals' names used as addressee and sender were bogus. Pursuant to a search warrant the package was opened and found to contain $154,647.00. The cash was vacuum sealed and secreted in spray foam insulation within a plastic 5 gallon bucket inside a mailing box. The parcel,

Defendant's Initials                2

intercepted in Jacksonville, had been mailed from Ocala. The undelivered package was never claimed. Terrell Brown's fingerprint was found on one of the vacuum-sealed packets.

On September 10, 2014, the Postal Service intercepted a package in Jacksonville mailed from Ocala to Chula Vista with a return address of Cherish Harris in Ocala, Florida. It was addressed to Rodane Lamb in Chula Vista, Ca. Both the return address and the recipient address were identified as actual addresses. A search of DAVID revealed that the Ocala address was the resident address of Cherish Harris Brown, now the wife of Terrell Brown. The Chula Vista address was not associated with Rodane Lamb whose residence is actually in Gainesville. Pursuant to a search warrant, $58,700.00 was located in the package which had been packed in exactly the same manner as the July 30th package. The package was seized and not delivered.

On September 16, 2014, a postal clerk from a station post office in San Diego reported that a "Roeane Lamb" called the post office via telephone on several occasions inquiring about the package.

On September 22, 2014, Cherish Brown appeared at the Jacksonville distribution center and made an application for a refund of her postage of $75.05. A refund was issued to her by money order. Surveillance captured still photos of Cherish Harris Brown filling out the application and receiving the refund. The postal clerk who received the original package for mailing described a black

Defendant's Initials      3

female fitting Cherish Brown's description as the person who mailed the package. At the time of the refund, Cherish Brown provided her Florida Driver's License as identification.

USPS records also revealed that on August 13, 2014, a package had been delivered to Rodane Lamb at the same address with a return of address for Cherish Harris in Ocala. That package weighed 3 pounds 12 ounces and required postage of $50.75. Circumstances suggest that this package resulted in the successful delivery of cash from Ocala, Florida, to Chula Vista, California.

Investigation identified three additional packages in April, May, and June, believed to be related to the intercepted packages, bearing similar return addresses and addressees. These packages were not intercepted but postal databases show similar postmarks, destinations, and size.

On October 2, 2014, J.C-S. met with a DEA informant in San Diego to discuss the purchase of a kilogram of cocaine. He arrived in a vehicle occupied by Terrell Brown, Rodane Lamb, and C.H (not Cherish Harris). The vehicle was registered to C.H. The address associated with the vehicle registration was the same address on the package sent by John Luckett on 9/11/13 containing over $200,000. During the incident J.C-S. was taken into custody and admitted he was there to buy a kilo of cocaine.

In 2012 a cooperating individual became one of the primary suppliers of kilo amounts of cocaine in the Ocala/Gainesville area.

Defendant's Initials                     4

In late 2012 he befriended Brown who was "up and coming" in the business. At first he supplied Brown with ¼ kilos but Brown quickly moved up and began buying kilos from him.

By 2013 this individual was selling Brown up to 5 kilos at a time and Brown was exploring other sources of cocaine.

In 2013 Brown found his own source for cocaine in California and rose above this individual as a kilo distributor.

Brown and others would use John Luckett's house in Ocala to further Brown's cocaine distribution efforts. Brown, with Luckett's permission, knowledge, and assistance, would sometimes store cocaine and/or money at Luckett's, as well as conduct cocaine transactions there.

Brown explained to the cooperating individual how he would ship money to and from California in furtherance of his network of cocaine distribution. Brown explained that he would vacuum-seal large amounts of cash, up to $200K at a time, place the cash into a 5 gallon plastic bucket with a screw-on lid, and then fill the empty areas of the bucket with spray-in foam. Brown told him that the $40,000.00 that John Luckett had seized at the airport belonged to Brown and that Luckett also lost money that was seized in the mail in Kentucky.

Other reliable witnesses will testify that Brown, Luckett, and Rodane Lamb would pool their money together and that between January 2013 and January 2014 members of the Sinaloa Cartel supplied them at least 60 kilograms of

Defendant's Initials           5

cocaine. Brown and Luckett frequently traveled to California together during this time period to purchase cocaine and to arrange for the cocaine's shipment from California to Ocala, Florida.

On August 5, 2015, DEA Special Agents established surveillance in Ocala, Florida at the Homewood Suites Hotel in Ocala, Florida, after seeing a Chrysler 200 belonging to Terrell Brown parked in the parking lot. Agents also saw a 2015 Chevrolet Impala rented by Jose Angel Huerta with a listed address in Chula Vista, California, parked nearby. The manager stated that room 405 was rented by Huerta.

Shortly after arriving, Brown left the parking lot in the Chrysler 200 and drove to a nearby Chic-fil-a restaurant. He then went back to the Homewood Suites. Brown stayed a short time and then left the hotel carrying a black bag. He got in the Chrysler 200 and left the area. Later that afternoon, Brown was observed delivering two kilos of cocaine to Rodane Lamb at a BP service station in Gainesville, Florida.

That evening at about 7 pm a silver Kia Optima registered to Brown's wife arrived. Huerta got out and went into the Homewood Suites. Ten minutes later Huerta came out carrying a black backpack which he placed in the trunk of the Kia. Huerta left and drove to a local restaurant. Huerta got out and went in. Huerta left the restaurant five minutes later and started walking on foot to an adjacent shopping center leaving the Kia where he had parked it in front of the restaurant.

Defendant's Initials                     6

Huerta was detained and consented to a search leading to the relinquishment of keys to a 2015 Chevrolet Impala, a single key to the Kia Optima, and a hotel room key to Homewood Suites. Officers found a black backpack in the Kia floorboard with six kilos of cocaine in it belonging to Brown and Huerta. A search of the Impala revealed 34 kilos of cocaine.  A search of Room 405 revealed over $205,000.00 cash.

While all of these events were taking place regarding Huerta, Terrell Brown had been followed by DEA to a house in Gainesville, Florida. He remained in there for a couple of hours and then left. DEA followed him to a gas station and attempted to detain him. Brown fled in his Chrysler 200 which he quickly wrecked into a light pole. Brown tried to flee on foot but was caught nearby. In his Chrysler was a kilo of heroin, several empty kilo wrappers for cocaine, a .45 caliber pistol with ammunition, and over $48,000.00.

The amount of cocaine attributable to Brown, Luckett and other members of this conspiracy between 2012 and 2015 is greater than 50 kilos but less than 150 kilos.

Defendant's Initials                     7